## KJAR v. DOAK, Secretary of Labor, et al.
### No. 4834.

Circuit Court of Appeals, Seventh Circuit.
Oct. 18, 1932.

Albert Goldman and David J. Bentall, both of Chicago, Ill., for appellant.

Dwight H. Green, U. S. Atty., and Walter E. Wiles, Asst. U. S. Atty., both of Chicago, Ill., and Robert D. Ross, Asst. U. S. Atty., of Evanston, Ill., for appellees.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

SPARKS, Circuit Judge.

This is an appeal from an order of the District Court denying appellant's petition for a writ of habeas corpus, arising out of an order of deportation.

Appellant was arrested on a warrant issued by the Secretary of the United States Department of Labor, which charged him with being a member of, or affiliated with, an 'organization, association, society; or group that advises, advocates, or teaches opposition to all organized government, and with being a member of, or affiliated with, an organization, association, society, or group that causes to be written, circulated, distributed, printed, published, or displayed written or printed matter advising, ad-

vocating, or teaching the overthrow by force or violence of the government of the United States, in violation of section 137 (c) (d) (e), title 8, U. S. C. (8 USCA § 137 (c, d, e).[1]

During the hearing which ensued before the immigrant inspector, and as a part of said proceedings, there was a further charge lodged against appellant by the Department of Labor to the effect that appellant was then in the United States in violation of the Immigration Act of 1924, 8 U. S. C. § 213 (a) (1), 8 USCA § 213 (a) (1), in that, at the time of his entry into the United States, subsequent to July 1, 1924, at an unknown port, he was not in possession of an unexpired immigration visé, and that he had been found in the United States in violation of the Immigration Act of February 5, 1917, 8 U. S. C. § 155, in that he entered without inspection.

Upon a hearing before the inspector, the record thereof was submitted to the Secretary of Labor, who found: (1) That appellant, at the time of his entry, was not in possession of an unexpired immigration visé. (2) That he entered without inspection. (3) That he is a member of, and affiliated with, an organization, association, society, or group, that causes to be circulated, distributed, printed, published, and displayed printed matter advising, advocating, and teaching the overthrow by force or violence of the government of the United States, and that he is a member of an organization that believes in and advocates the overthrow by force or violence of the government of the United States.

A warrant containing said findings was accordingly issued, by virtue of which appellant was taken into custody. He obtained a writ of habeas corpus, which writ upon hearing was discharged.

■ Appellant's first objection is directed to the form of the charge in the original warrant of arrest, in that the charge is made in the alternative; that is to say, the conjunctions used are disjunctive rather than conjunctive. Such use is for the purpose of connecting descriptive words or phrases of synonymous import, and will not be considered as constituting alternative charges. It will be observed that the finding in the warrant of deportation corrects this alleged defect, and, inasmuch as appellant did not raise the objection until after the warrant of deportation was served, he will be considered as having waived the alleged error.

The other alleged errors relied upon arise out of the conduct of the hearing before the immigration inspector, the findings of the Secretary of Labor, and the judgment of the District Court.

■ In the review of an executive decision, such decision will not be disturbed by the court if the parties concerned were afforded a fair hearing and if such decision is supported by substantial evidence. Low Wah Suey v. Backus, 225 U. S. 460, 32 S. Ct. 734, 56 L. Ed. 1165; Prentis v. Cosmas (C. C. A.) 196 F. 372; Domenici v. Johnson (C. C. A.) 10 F.(2d) 433.

■ In a deportation proceeding before an executive officer, he is not bound to observe the strict rules of evidence as enforced by judicial tribunals, and the improper admission or rejection of hearsay evidence is not a ground for reversal of the action of the executive which has not resulted in a denial of justice. Bilokumsky v. Tod, 263 U. S. 149, 44 S. Ct. 54, 68 L. Ed. 221; Tang Tun v. Edsell, 223 U. S. 673, 32 S. Ct. 359, 56 L. Ed. 606; Chin Yow v. United States, 208 U. S. 8, 28 S. Ct. 201, 52 L. Ed. 369.

The evidence before the District Court consisted of the record made at the hearing before the immigrant inspector, at which appellant and his counsel were present. The evidence, in part, was to the effect that appellant is a native of Denmark, and first entered the United States on or about October 1, 1914; that early in 1928 he went to Russia and later to Denmark, and that in the latter part of the following June he entered the United States at an unknown place. Those facts appellant refused to admit or deny; but he admitted he was an alien, and was secretary and organizer for "The Trade Union Unity League," and was a field organizer for that league. He also stated that that organ-

---

[1] Section 137, title 8, U. S. C. (8 USCA § 137):

"In addition to the aliens who are by law otherwise excluded from admission into the United States, the following persons shall also be excluded from admission into the United States: * * *

"(c) * * * Aliens who believe in, advise, advocate, or teach, or who are members of or affiliated with any organization, association, society, or group, that believes in, advises, advocates, or teaches: (1) the overthrow by force or violence of the Government of the United States or of all forms of law, * * *

"(d) * * * Aliens who * * * distribute * * * any written or printed matter, advising, advocating, or teaching, opposition to all organized government, or advising, advocating, or teaching: (1) the overthrow by force or violence of the Government of the United States or of all forms of law, * * *

"(e) * * * Aliens who are members of or affiliated with any organization, association, society, or group, that writes, circulates, distributes, prints, publishes, or displays, or causes to be written, circulated, distributed, printed, published, or displayed, or that has in its possession for the purpose of circulation, distribution, publication, issue, or display, any written or printed matter of the character described in paragraph (d)."

ization is affiliated with the Red International Union Labor, which has its headquarters at Moscow, Russia. He further stated that at the time his testimony was given he was a member of the Communist Party of America; that he subscribed to the principles and teachings of the Communist Party as far as he understood them; and that the Communist Party is a world-wide party having a central committee constituted of delegates from all Communist Parties over the entire world, and having its headquarters at Moscow.

There was introduced in evidence a pamphlet published by Workers' Library Publishers, Inc., of New York City, entitled "Programme of the Communist International, Together with the Statutes of the Communist International." From page 85 of that pamphlet we quote the following:

"The Communist International—the International Workers' Association—is a union of Communist Parties in various countries; it is a World Communist Party. * * *

"Each of the various Parties affiliated to the Communist International is called the Communist Party of (name of country) (Section of the Communist International). In any given country there can be only one Communist Party affiliated to the Communist International and representing its Section in that country.

"Membership in the Communist Party and in the Communist International is open to all those who accept the programme and rules of the given Communist Party and of the Communist International, who join one of the basic units of a Party, actively work in it, abide by all the decisions of the Party and of the Communist International, and regularly pay Party dues."

From pages 33, 34, and 35 of the same pamphlet there is found the following language:

"The conquest of power by the proletariat is a necessary condition precedent to the growth of socialist forms of economy and to the cultural growth of the proletariat, * * *

"The conquest of power by the proletariat does not mean peacefully 'capturing' the ready-made bourgeois State machinery by means of a parliamentary majority. * * * The conquest of power by the proletariat is the violent overthrow of bourgeois power, the destruction of the capitalist State apparatus (bourgeois armies, police, bureaucratic hierarchy, the judiciary, parliaments, etc.), and substituting in its place new organs of proletarian power, to serve primarily as instruments for the suppression of the exploiters."

There was likewise introduced in evidence a pamphlet entitled "The Trade Union Unity League, Affiliated to R. I. L. U. Its Program, Structure, Methods and History." It purports to have been published by that League in 1929. There was also introduced in evidence the "10th Anniversary Souvenir Book" of the Communist Party, issued by the executive committee of that party at Chicago in September, 1929. The import of the two last-named exhibits is quite similar to that of the program of the Communist International.

It is first contended by appellant that the Communist Party is not a party of such political violence as to bring its alien members within the purview of 8 U. S. C. § 137 (8 USCA § 137), because it does not advocate initial violence. He insists that the Communist Party's program contemplates a resort only to argument and persuasion until such time when that party shall be in control of the government; and, if and when such time arrives the owners of capital refuse to be peaceably dispossessed of their property, as the Communist Party anticipates will be the case, then and in that event force and violence will be resorted to by that party in order to accomplish its end.

The programs of the Communist International, the Trade Union Unity League, and the Communist Party of America, as shown by the evidence, do not warrant such construction; but, on the other hand, they are quite convincing of the fact that the Communist Party believes and advocates the use of force and violence whenever and wherever sufficient power is present to accomplish the purpose.

If it be conceded that appellant is right in this contention, that fact would not relieve him from the operation of the statute, which is not based alone on initial violence. Possession of our government is accomplished many times by a mere majority—and oftentimes by a minority—of its citizens; yet in such event it could not be claimed that the political party in possession would have the right to strike down the basic form of our government as prescribed by our Constitution, and by force or otherwise dispossess owners of their property. Our Federal Constitution, and those of the several states, can be modified or abrogated only by the method therein provided, and that right is not dependent upon possession of mere governmental agencies.

Appellant contends, however, that the right of revolution is inherent in every individual. That right, if it exists, depends upon where such individual attempts to operate in his effort to effect such right. Revolution presupposes an antagonism between a government and its nationals, not between a government and aliens. As a citizen of Denmark, appellant has no right of revolution as against the United States. United States v. Tapolesanyi (C. C. A.) 40 F.(2d) 255.

It is further contended by appellant that it was improper to admit in evidence the programs and literature of the organizations in which he held memberships or with which he was affiliated. The basis of this contention is: (1) There is no evidence to show that the several organizations referred to still believe or advocate the teachings contained in such programs and literature. (2) There is no evidence to show that the Communist Party of America or the Trade Union Unity League, in each of which appellant holds membership, believes and teaches the same things as are believed and taught by the Communist International. (3) The evidence does not show that appellant had knowledge of the contents of the documents referred to.

In the absence of evidence to the contrary, it will be presumed that the organizations referred to continue to advocate and teach the same principles as are set forth in the documents introduced, all of which were published as late as 1929.

Whether the Communist Party or the Trade Union Unity League believes and advocates the same things as does the Communist International is not material. It is sufficient if they are affiliated, and that fact, under the evidence, cannot be denied. Nor was it necessary to prove that appellant had knowledge of the contents of the programs of the several organizations, or any one of them. It is sufficient if the evidence showed that he was a member of, or affiliated with, such an organization as contemplated by the statute. The documents objected to by appellant were properly admitted in evidence. Murdoch v. Clark (C. C. A.) 53 F.(2d) 155. That evidence clearly characterized the Communist International as an organization contemplated by the statute now under consideration. The Communist Party of America is an affiliate of that organization, and by reason of that affiliation appellant, who admits membership in the latter, must be considered an affiliate of the former organization. A perusal of the program of the Trade Union Unity League in connection with the other evidence in the cause convinces us that it is quite closely affiliated with both the Communist International and the Communist Party of America.

Membership of an alien in, or affiliation with, the Communist Party or the Trade Union Unity League has been held sufficient to support a warrant issued by the Department of Labor for such alien's deportation. Antolish v. Paul (C. C. A.) 283 F. 957; Skeffington v. Katzeff (C. C. A.) 277 F. 129; Ungar v. Seaman (C. C. A.) 4 F.(2d) 80; Vilarino v. Garrity (C. C. A.) 50 F.(2d) 582; Murdoch v. Clark, supra.

In support of the charges that appellant entered the United States without an unexpired visé and without inspection, there was introduced in evidence a consular certificate from the American consul at Copenhagen, Denmark, dated October 16, 1931, which includes a statement taken from Otto Mikkelsen Kjar, the father of appellant, by the Burgermaster of Hammarum at Fastrup, Gellerup, Ringksbing, Denmark, to the effect that his son visited him in Denmark in 1928. If that statement be true, appellant was not entitled to re-enter the United States without inspection and unless he had at that time an unexpired immigration visé. Concerning the visit, the re-entry, the inspection, or the visé, appellant positively refused to give information; but he contends (1) that the consular certificate was improperly admitted in evidence because of the fact that it is hearsay, (2) that the father's statement may have referred to a son other than appellant, and (3) that the burden of proving the absence of a visé or of an inspection rests upon appellee.

The first of these last-named objections has been decided adversely to appellant's contention. United States ex rel. Smith v. Curran (C. C. A.) 12 F.(2d) 636; Morrell v. Baker (C. C. A.) 270 F. 577; United States ex rel. Diamond v. Uhl (C. C. A.) 266 F. 34. As to the second objection, it is hardly probable that the father was referring to any son other than appellant, and under the facts disclosed by the record the inference made by the Inspector and the Department of Labor in that respect was fully warranted. The third objection was properly overruled.

"Whenever any alien attempts to enter the United States the burden of proof shall be upon such alien to establish that he is not subject to exclusion under any provision of

the immigration laws; and in any deportation proceeding against any alien the burden of proof shall be upon such alien to show that he entered the United States lawfully, and the time, place, and manner of such entry into the United States * * *." Section 221, title 8, U. S. C. (8 USCA § 221).

█ That appellant had absented himself from the United States in February, 1928, and returned in June, 1928, is supported by a statement of appellant's wife made to Inspector Sigurdson, in which she stated that during that period she had received a letter from appellant while he was in Denmark. Appellant insists that there was error in admitting the statement of his wife because of her incompetency as a witness under the law. There is no merit in this contention, inasmuch as the statement was made in February, 1930, and she was not married to him until May, 1930.

█ The very fact that appellant refused to testify in relation to his alleged absence and return was a circumstance of very great weight, from which it was quite proper for the inspector and the Department of Labor to infer that he was absent as alleged. Bilokumsky v. Tod, supra; Saksagansky v. Weedin (C. C. A.) 53 F.(2d) 13.

Congress has the power to prescribe conditions upon which aliens may be admitted and permitted · to· remain in this .country. Those conditions are binding upon the courts, and we have no authority or discretion, to disregard them.

A perusal of the record convinces us that appellant was accorded a fair hearing, and that there is substantial evidence in the record to support each charge.

The order of the District Court is affirmed.