**UNITED STATES ex rel. SMITH v. CURRAN, Commissioner of Immigration.**

(Circuit Court of Appeals, Second Circuit. June 1, 1926.)

No. 309.

**1. Aliens** ⬤⇒54(7).

In proceedings in immigration cases, neither the hearsay, the best evidence, nor any of the common-law rules of evidence need be observed.

**2. Aliens** ⬤⇒54(17).

The weight to be given documentary evidence in immigration cases is question for board of special inquiry.

**3. Aliens** ⬤⇒54(9)—Evidence held to justify finding that immigration visas were forged (Immigration Act 1924, § 6, subd. (a), par. 2 [Comp. St. Supp. 1925, § 4289¾c]).

Evidence, consisting of cablegram from foreign counsel and letter from Department of State, *held* sufficient to warrant finding that immigration visas presented by one claiming a preference under Immigration Act 1924, § 6, subd. (a), par. 2 (Comp. St. Supp. 1925, § 4289¾c), were forged.

**4. Aliens** ⬤⇒49—Alien woman and three year old son held properly excluded as assisted aliens, likely to become public charges (Immigration Act 1924, § 6, subd. (a), par. 2 [Comp. St. Supp. 1925, § 4289¾c]; Act Feb. 5, 1917, § 3 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼b]).

Exclusion of alien woman and three year old son, claiming a preference under Immigra-

tion Act 1924, § 6, subd. (a), par. 2 (Comp. St. Supp. 1925, § 4289¾c), as being skilled in agriculture, *held* warranted under Act Feb. 5, 1917, § 3 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼b), on ground that they were assisted aliens likely to become public charges.

**5. Aliens ⬭49.**

Under Act Feb. 5, 1917, § 3 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼b), assistance offered by persons under no legal duty does not require finding that alien is not likely to become public charge.

Appeal from the District Court of the United States for the Southern District of New York.

Habeas corpus proceeding by the United States, on the relation of Sarah Smith, against Henry H. Curran, as Commissioner of Immigration at the Port of New York. From a judgment dismissing the writ, relator appeals. Affirmed.

Peter S. George, of New York City (George W. Riley, of New York City, of counsel), for appellant.

Emory R. Buckner, U. S. Atty., of New York City (Nathan R. Margold, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before ROGERS, MANTON, and HAND, Circuit Judges.

MANTON, Circuit Judge. Maria Schulhoff, a widow, and her son, three years of age, arrived at the port of New York on May 29, 1925. She presented a German police identification certificate and a quota immigration visa purporting to have been issued by the United States consul at Koenigsburg, Germany, upon which she made the claim that, as a quota immigrant, she was entitled to a preference under section 6 (a) (2) of the Immigration Act of 1924 (Comp. St. Supp. 1925, § 4289¾c), which grants a preference in the issuance of immigration visas "to a quota immigrant who is skilled in agriculture, and his wife, and his dependent children under the age of 16 years, if accompanying or following to join him." This widow thus represented herself as one skilled in agriculture who desired the benefit accorded by this section. She stated that she was about to go to the farm of her brother-in-law at Forest Grove, Or. She was accorded hearings.

At the first hearing, she testified that she had a brother-in-law at Forest Grove, Or.; that she had $21 in her possession, but no ticket or other arrangements were made for her transportation. Pending the promise of the receipt of $100 and an affidavit in support of her claim, from her sister in Oregon, she was detained. At the second hearing, on June 4, 1925, it appeared that the relatives in Oregon had not been heard from, but a brother-in-law and sister-in-law of the elder alien, who lived in Brooklyn, and who bore the same names as the alleged relatives in Oregon, deposited $100 for the aliens. Another relative submitted an affidavit stating that the aliens were going to live at Forest Grove, Or., and he asserted his willingness and ability to support the aliens and to furnish a bond to secure his promise. There was submitted, at this hearing, a telegram to the Secretary of State, received from the consul at Rotterdam, stating that the sender had been informed by the American consul at Berlin that the aliens "are alleged to have forged visas purporting to be issued by the consulate at Koenigsburg." The board agreed unanimously to exclude the aliens as quota immigrants not in possession of quota immigration visas and as persons likely to become public charges and as assisted aliens. An appeal was taken to the Secretary of Labor. The proceeding was reopened for the reception of the report of the State Department indicating that the visas presented by the aliens were not genuine. A third hearing was accorded on June 30, 1925 and there was admitted in the record the following letter:

"Department of State, Washington.

"Dear Mr. Tolman: Referring to my letter to you of June 17th regarding Mary Glas, Bela Grudz, and Mrs. M. Schulhoff and minor child, I neglected to return to you your file in the case of Mrs. Schulhoff and child which I am doing now. I may add that we have received another cablegram from the American consul at Koenigsburg, dated June 17th, specifically stating that his office did not issue visas to Mary Schulhoff and child.

"Very sincerely yours,

"Assistant Chief Visa Officer."

At this hearing no record of the existence of the relatives in Oregon, nor any message from them, was offered. For the third time it was determined to exclude the immigrants. Upon appeal, this result was affirmed, and the District Judge dismissed the writ sued out seeking to review this determination.

[1, 2] It is argued that documents in the record relating to forged visas were inadmissible and have no probative value, to constitute some evidence upon which to support the board's finding that the visas were forged. It is now long established, in proceedings in immigration cases, that neither the hearsay rule nor the best evidence rule, nor, indeed, any of

the common-law rules of evidence, need be observed. A board of special inquiry, which determines these cases, may consider hearsay evidence and administrative findings, although based upon evidence which would not be competent in a court of law, which evidence may not be attacked upon habeas corpus. United States ex rel. Diamond v. Uhl (C. C. A.) 266 F. 34; Morrell v. Baker (C. C. A.) 270 F. 577. The weight to be given to such documents as were admitted, relating to the genuineness of the aliens' visas, was for the board's determination.

[3] But we are obliged to inquire whether it is sufficient to constitute some evidence to support the board's finding that the visas were forged. The letter from the Department of State to the Assistant Commissioner General of Immigration, which was introduced at the last hearing, indicates that the American consul at Koenigsburg had cabled direct to the State Department, stating that his office did not issue visas to the immigrants. It was an official communication, and the board had a right to consider it with controlling weight. In addition, there is a cablegram from Berlin, sent direct to the Commissioner General of Immigration at Ellis Island, which was offered at the first hearing, and the cablegram from the American consul at Rotterdam to the Secretary of State, which was introduced at the second hearing. This evidence, considering its source, was sufficient. Upon it, the board of inquiry was justified in making the determination it did.

This elder immigrant sought admission as one skilled in agriculture, under section 6 (a) (2) of the Immigration Act of 1924 (Comp. St. Supp. 1925, § 4289¾c). Her representations as to relatives in Oregon and their possession of a farm, to which she intended to go and utilize her experience in agriculture, was justifiably found by the board to have been employed by her to obtain a preference in the quota as an agricultural worker. The efforts to communicate with the Oregon relatives produced no result. There is a discrepancy between the story of the relative who filed the affidavit and the elder alien's testimony at the hearing, where she said he was a friend of a brother-in-law, whereas he represented himself to be a relative. The similar name of the relatives in Brooklyn to that of the relatives in Forest Grove, Or., is a sus-

picious circumstance, and on this record the board was justified in considering the statement as to the relatives in Oregon false, and the use of the affidavit by the relatives in New York to be an attempted fraud. Indeed, from the phrase of the statute referred to, it is doubtful if the preference granted to a quota immigrant who is skilled in agriculture applies to a female. That question, however, we need not now decide.

[4, 5] Another objection to the admission of the immigrants is that they were assisted aliens, under section 3 of the Act of February 5, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼b). The board's finding was that the aliens were likely to become public charges. There was affirmative evidence in the record to support a finding that the aliens were in fact persons likely to become public charges. Wallis v. United States (C. C. A.) 273 F. 511. The assistance offered by the friends and relatives, upon whom an alien has no legal claim for support, is not sufficient to require a finding that the alien is not a person likely to become a public charge. Therefore the offer of the relative affiant, who filed his affidavit in behalf of the aliens, offering to take care of them, would not change the result. Under section 3 of the Act of February 5, 1917, aliens are excluded from admission to the United States who are "persons whose tickets or passage is paid for with the money of another, or who are assisted by others to come, unless it is affirmatively and satisfactorily shown that such persons do not belong to one of the foregoing excluded classes. * * *" The act permits the Department of Labor to exclude an assisted alien, unless he affirmatively and satisfactorily shows that he does not belong to one or the other excluded classes in section 3, which precedes the "assisted alien" clause. U. S. ex rel. Azizian v. Curran (C. C. A. Second Circuit) 12 F.(2d) 502, decided May 21, 1926 (with reference to U. S. ex rel. Engel v. Tod [C. C. A.] 294 F. 820); U. S. ex rel. Barlin v. Rodgers, 191 F. 970, 112 C. C. A. 382.

Because of these considerations, the conclusion below was properly reached, and the order dismissing the writ of habeas corpus and remanding the aliens for deportation is affirmed.

HAND, Circuit Judge. I concur on the first and second grounds.